Mark **BERNDT,** Plaintiff,

v.

**Chief of Police Ernest A. JACOBI,** Defendant.

No. 91 C 5059.

United States District Court, N.D. Illinois, E.D.

Dec. 16, 1991.

Kenneth N. Flaxman, Kenneth N. Flaxman P.C., Chicago, Ill., for plaintiff.

Jack M. Siegel, Altheimer & Gray, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

### Introduction

Mark Berndt, a police officer employed by the City of Evanston, Illinois, brings this action under 42 U.S.C. § 1983 against Ernest A. Jacobi, Evanston's Chief of Police. His amended complaint asserts that he was disciplined in retaliation for having brought (along with his union) a prior civil rights case against the City of Evanston. According to Berndt, the allegedly retaliatory disciplinary action taken against him violated rights protected by the First and Fourteenth Amendments.

Defendant Jacobi has moved under Rule 12(b)(6) to dismiss the complaint. Defendant's motion is granted.

### Facts [1]

On January 28, 1991, Berndt and his union, Combined Counties Police Associa-

1. This review of the facts is culled from the allegations of Berndt's complaint which are tak-

tion ("CCPA"), filed a civil action in the United States District Court for the Northern District of Illinois, *Combined Counties Police Association and Mark Berndt v. City of Evanston,* 91 C 528. The complaint in *CCPA and Berndt v. Evanston* alleged that the City of Evanston had adopted a policy that requires its police officers to violate the constitutional rights of citizens.[2]

The plaintiffs in *CCPA and Berndt v. Evanston* alleged the following facts. At approximately 11:45 p.m. on October 29, 1989, a vehicle pulled up to Berndt who was taking a coffee break but who was on duty and in uniform. A man whose identity was unknown to Berndt emerged from the car and, while laughing, asked, "You looking for me?" Berndt responded with a question of his own, "Who are you?" The man answered, "You know who I am," but Berndt responded that he did no know him.

The stranger then declared, "I'll just turn my own self in," ran back to his car and drove off. Based on that encounter, which took no more than twenty seconds, Berndt did not believe that he had a lawful basis to detain the man.

The man then went to the Evanston police station and surrendered on an outstanding battery warrant. At the police station, he complained that Berndt had refused to arrest him.

Based on that complaint, the Evanston police department accused Berndt of misconduct. Following an investigation, Evanston's Chief of Police concluded that Berndt was guilty of wrongdoing and should be suspended for five days. CCPA, Berndt's union, filed timely grievances on his behalf under its collective bargaining agreement with the city. Evanston's Chief of Police and its City Manager denied the grievances and Berndt and CCPA filed Case No. 91–528 in federal court.

The *CCPA and Berndt v. Evanston* complaint further alleged that the City of Evanston had adopted an unconstitutional policy. Paragraphs 13 and 14 of that complaint stated:

13. By disciplining plaintiff Berndt for failing to detain a citizen in circumstances when a reasonable police officer would not believe that he had a lawful basis to detain, defendant City of Evanston has adopted a policy which, if allowed to stand, will require plaintiff Berndt and other police officer members of the Combined Counties Police Association to violate the constitutional rights of citizens.

14. Unless restrained by this Court, defendant City of Evanston will continue to discipline police officers who refuse to make unconstitutional detentions of the type described herein, thereby causing irreparable harm to the members of plaintiff CCPA and to persons who [sic] constitutional rights will be violated because of the unconstitutional policy.

As relief, the complaint requested that the "Court issue a permanent injunction prohibiting the City of Evanston from disciplining police officers who refuse to detain a citizen in circumstances where a police officer would not believe that he (or she) had a lawful basis to detain."

Berndt's amended complaint in this action alleges that filing the complaint in *CCPA and Berndt v. Evanston* was part of an overall effort by him and by his union to correct unlawful practices and bring them to public attention. The *CCPA and Berndt v. Evanston* lawsuit was in fact reported in news articles in the *Evanston Review,* the Evanston community newspaper, and in the *Daily Northwestern,* the

en as true for purposes of this motion. *See Gregory v. Nunn,* 895 F.2d 413 (7th Cir.1990).

**2.** Judge Williams dismissed the case on June 7, 1991. *See Combined Counties Police Association and Mark Berndt v. City of Evanston,* No. 91 C 528, slip op., 1991 WL 104139 (N.D.Ill. June 7, 1991) (*"Berndt I"*), *appeal pending,* 7th Cir., No. 91–2554. Berndt's amended complaint in this action incorrectly states that a copy of the complaint in *CCPA and Berndt v. Evanston* was attached to it. In fact, the *CCPA and Berndt v. Evanston* complaint was not attached to Berndt's amended complaint. After reviewing the files in the Clerk's Office of the Seventh Circuit Court of Appeals, this court takes judicial notice of the allegations in *CCPA and Berndt v. Evanston* which is currently on appeal.

daily newspaper published by students at Northwestern University.

On March 15, 1991, after the filing of *CCPA and Berndt v. Evanston,* Defendant Chief of Police Jacobi imposed a five day suspension on Berndt. This five day suspension was ostensibly for an incident of alleged misconduct that occurred on December 10, 1990. On July 26, 1991 (over a month after Judge Williams dismissed the case), Defendant Jacobi imposed a thirty day suspension on Berndt. The thirty day suspension was said to be for an incident of alleged misconduct that had occurred on December 16, 1990.

Berndt alleges that a substantial motivating factor in Jacobi's imposition of the five and thirty day suspensions was the fact that Berndt was a co-plaintiff in *CCPA and Berndt v. Evanston.* Were it not for Defendant's desire to retaliate, Berndt alleges, there would either have been no discipline imposed or the sanctions would have been less severe.

### Discussion

#### A. Standard of Review

Defendant Jacobi's motion to dismiss can be granted only if "it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). Only if the allegations of the complaint, and all reasonable inferences drawn therefrom, could not support any cause of action may this court grant a motion to dismiss. *Id.*

#### B. Identifying the Right at Stake: Substantive Due Process

Defendant Jacobi argues in his briefs that Berndt's complaint should be dismissed because the challenged suspensions did not deprive Berndt of a protected property interest and because Berndt allegedly has an adequate state remedy by way of administrative review of the suspensions. These arguments incorrectly presume, however, that Berndt is claiming the infringement of *procedural* due process protections. In fact, Berndt is charging the Defendant with a violation of *substantive* due process.

Berndt claims that by retaliating against him for filing the prior lawsuit against the City of Evanston, Defendant Jacobi has violated his First Amendment rights. The First Amendment applies to the states through the *substantive* component of the Fourteenth Amendment's due process clause. *See Altman v. Hurst,* 734 F.2d 1240 (7th Cir.1984); *Brown v. Brienen,* 722 F.2d 360, 366 (7th Cir.1983).

■ Defendant is correct that, were this a *procedural* due process case, the relevant inquiries would be whether Berndt was deprived of a protected liberty or property interest, and if so, whether the process available to contest the deprivation was "due." *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under that analytic approach, there is indeed considerable authority to support Jacobi's argument that Berndt lacks a property interest in his employment as an Evanston police officer. *See Berndt I* (Berndt lacked a property interest); *Davis v. City of Chicago,* 841 F.2d 186, 188 (7th Cir.1988) (no general property interest under Illinois law in public employment); *Hershinow v. Bonamarte,* 735 F.2d 264 (7th Cir.1984) (suspension of police officer did not implicate a protected liberty or property interest).

■ Defendant Jacobi also argues that the process available is "due," contending that Berndt has adequate state remedies including the review of disciplinary proceedings before the Evanston Civil Service Commission and under the administrative review law of Illinois, Ill.Rev.Stat., ch. 24, ¶ 10–1–45. He relies on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) in making the argument that the availability of post-suspension remedies satisfies due process. As mentioned above, however, the availability of post-suspension remedies is not relevant in determining whether *substantive* due process has been violated. *See Hudson v. Palmer,* 468 U.S. at 541 n. 4, 104 S.Ct. at 3208 n. 4 (Stevens, J., con-

curring in part) (majority's analysis of availability of post-deprivation remedies does not apply to conduct that violates a substantive constitutional right, "actions governmental officials may not take no matter what procedural protections accompany them"); *see also Parratt v. Taylor*, 451 U.S. at 546, 553, 101 S.Ct. at 1918, 1921 (Powell, J., concurring).

■ The Seventh Circuit has made plain that the availability of post-deprivation remedies is not germane to violations of particular substantive provisions of the Constitution. In *Sizemore v. Williford*, 829 F.2d 608 (7th Cir.1987), an inmate in a federal prison alleged that the prison's withholding delivery of newspapers to which he subscribed violated his First Amendment rights. The Seventh Circuit reversed the district court which had ruled under *Hudson* and *Parratt* that the availability of the Federal Tort Claims Act (a post-deprivation remedy) precluded the prisoner's action. Emphasizing that the prisoner's case was brought under the First Amendment rather than under procedural due process, the Seventh Circuit wrote: ·

> '*Parratt* is ... not applicable to instances where the substantive guarantees of the Constitution are alleged to be violated, as opposed to alleged violations of procedural due process.' Thus, despite the government's contrary assertions, the `separate and independent existence of [the prisoner's] First Amendment claim is *in no way affected*, let alone precluded, by the availability of alternate procedural remedies fully adequate to afford Sizemore due process of law for a deprivation of personal property.

*Id.* at 611 (emphasis supplied), in part quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 872 (7th Cir.1983).

The Fifth Circuit has stated the irrelevance of available procedures and remedies to violations of substantive due process in similarly powerful and unambiguous terms:

> [W]hen a plaintiff alleges that state action has violated an independent substantive right, he asserts that the action is

unconstitutional. If so, his rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action.

*Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir.1987), quoting *Augustine v. Doe*, 740 F.2d 322 (5th Cir.1984).

### C. Elements of a First Amendment Violation

■ Ever since *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), "it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). The fact that the public employee lacks tenure, *i.e.*, lacks a property interest in his employment, makes no difference if his public employer has made an adverse employment decision based on the employee's exercise of a first amendment right.

■ In *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a school district decided not to rehire an untenured high school teacher. The untenured teacher, Doyle, alleged that he was not rehired because of certain constitutionally protected statements that he made to a radio station. The Supreme Court stated:

> Doyle's claims under the First and Fourteenth Amendments are not defeated by the fact that he did not have tenure. Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, *Board of Regents v. Roth*, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548] (1972), he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedom.

*Id.* at 283, 97 S.Ct. at 574.[3] Judge Williams' decision that Berndt lacks a prop-

---

**3.** The fact that a public employer may not deny    an employment benefit to an employee because

erty interest in his position as an Evanston police officer thus has no bearing on the issue this court must decide. *See Berndt I.*[4]

■ Although a public employee may not be punished for constitutionally protected speech, not everything a public employee says is protected. Courts reviewing free speech cases brought by public employees must strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers,* 461 U.S. at 142, 103 S.Ct. at 1687, quoting *Pickering v. Board of Education,* 391 U.S. at 568, 88 S.Ct. at 1734. In *Connick,* the Supreme Court ruled that only if the public employee's expression "constitutes speech on a matter of public concern," is the employee protected from the denial of otherwise unprotected employment benefits. *Id.* 461 U.S. at 146, 103 S.Ct. at 1689. If the public employee's expression does not relate to a matter of public concern, "it is unnecessary ... to scrutinize the reasons" for the particular employment decision taken. *Id.*

Berndt argues that his now-dismissed lawsuit against the City of Evanston was expression protected by the First Amendment. Several Supreme Court cases do indicate that the First Amendment protects certain forms of litigation. *See Bates v. State Bar,* 433 U.S. 350, 376 n. 32, 97 S.Ct. 2691, 2705 n. 32, 53 L.Ed.2d 810 (1977), *reh. denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *NAACP v. Button,* 371

U.S. 415, 429, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963). In *Button* the Court held that the NAACP's recruitment of prospective plaintiffs for civil rights litigation was protected under the First and Fourteenth Amendments. Commenting on the NAACP's use of litigation, the Supreme Court wrote:

> In the context of NAACP objectives, litigation is not a technique of resolving private differences; it is a means of achieving the lawful objectives of equality of treatment by all government, federal, state and local, for members of the Negro community in this country. It is thus a form of political expression.

*Id.*

■ The Seventh Circuit has stated that "[a] close reading of [*Bates* and *Button* ] clearly shows that the Court was concerned about political expression and not the general right to bring suit in a federal court of law." *Altman v. Hurst,* 734 F.2d 1240, 1244 n. 10 (7th Cir.1984). Furthermore, according to the Seventh Circuit, its interpretation of those cases "dovetails with the *Connick* rule that limits the first amendment protection given public employees to pronouncement on public issues. Thus, a private office dispute cannot be constitutionalized merely by filing a legal action." *Id.* Therefore, if Berndt's prior lawsuit against Evanston, *CCPA and Berñdt v. Evanston,* was a matter of "public concern," then his bringing that action was protected by the First Amendment; otherwise it was not. *See Yatvin v. Madison*

---

of that employee's exercise of free speech even though it could have denied the benefit for "no reason whatever" is an example of the mysterious doctrine of unconstitutional conditions. "The doctrine of unconstitutional conditions holds that government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether. It reflects the triumph of the view that government may not do indirectly what it may not do directly over the view that the greater power to deny a benefit includes the lesser power to impose a condition on its receipt." Kathleen M. Sullivan, *Unconstitutional Conditions,* 102 Harv.L.Rev. 1415 (1989). The doctrine of unconstitutional conditions has recently been the subject of a

great deal of scholarly inquiry. *See id; see also* Richard Epstein, *The Supreme Court, 1987 Term—Foreword: Unconstitutional Conditions, State Power, and the Limits of Consent,* 102 Harv.L.Rev. 4 (1988).

**4.** In addition, the court finds irrelevant the fact that Berndt did not actually lose his job but was "merely" suspended instead. In *Altman v. Hurst,* 734 F.2d 1240, 1243 (7th Cir.1984), the Seventh Circuit rejected a police sergeant's First Amendment claims on many grounds including the fact that he was merely complaining of harassment and that he had been neither "fired nor *suspended* " for his allegedly protected speech. (emphasis supplied).

*Metropolitan School Dist.*, 840 F.2d 412 (7th Cir.1988).

### D. *Berndt's Prior Lawsuit Was Not a Matter of Public Concern*

In his amended complaint in this action, Berndt alleges that his prior suit "sought relief against systemic misconduct and was part of an overall effort by Berndt and the Combined Counties Police Association to correct allegedly unlawful practices and to bring them to public attention." Amended Complaint ¶ 7. According to Berndt, the claim presented in *CCPA and Berndt v. Evanston* brought to the public's attention the charge that Evanston had adopted a policy requiring its police officers to arrest citizens without adequate cause in violation of the Fourth Amendment.

Berndt's bold assertions about Evanston's "systemic misconduct" are utterly disproportionate to the actual facts that he can conjure up to allege in support. Judge Williams so observed in her opinion dismissing the prior suit against the City of Evanston. That suit was dismissed in part because there were insufficient allegations of a pattern of wrongdoing on the part of the city. The judge wrote:

> [T]he plaintiffs [CCPA and Berndt] fail to allege that the defendant had a policy, or engaged in a pattern, custom or practice of unconstitutional conduct by forcing police officers to make unconstitutional stops. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691–94 [98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611] (1978). This lawsuit is based on one instance where disciplinary action was carried out against officer Berndt because he failed to stop a citizen. There is no suggestion that any other officers in the department were ever reprimanded for failing to make unconstitutional stops. The court notes that plaintiffs appear to concede these arguments, since they ignored them in their response to the motion to dismiss.

*Berndt* I at 4. Later, discussing CCPA's and Berndt's lack of standing to raise *jus tertii* arguments on behalf of Evanston's citizens, the opinion states that "plaintiffs have not shown continuity of defendant's alleged illegal conduct. In fact out of the entire class of plaintiffs, only Berndt claims that he has actually suffered an injury because of the defendant's conduct." *Id.* at 6.

A public employee can not convert a private dispute with his employer into a matter of "public concern" by dressing up that dispute with wild assertions about "systemic misconduct." The fact that even a single police officer might be disciplined for his refusal to violate the Constitution is, of course, highly improper. If anything, a police officer should be commended, not disciplined, for his fidelity to the Constitution.

A lawsuit over the single incident alleged in *CCPA and Berndt v. Evanston*, however, does not rise to the level of "public concern" necessary to trigger First Amendment protection under *NAACP v. Button* and *Connick v. Myers*. As mentioned above, Berndt has failed to allege that Evanston's "systemic misconduct" consisted of more than a single occurrence.

The Seventh Circuit has stated that for a lawsuit by a public employee to be protected under the First Amendment, it must be "part of an overall effort to correct allegedly unlawful practices or to bring them to public attention." *Yatvin v. Madison Metropolitan School Dist.*, 840 F.2d 412, 418 (7th Cir.1988). "Relief must be sought against pervasive and systemic misconduct by public officials." *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir.1990).

In *Yatvin*, a principal of a public school charged that the denial of two promotions she sought violated her rights under Title VII and the First and Fourteenth Amendments. She claimed that she was turned down the first time because she was a woman and the second time in retaliation for her action in filing sex discrimination charges growing out of her first application.

Yatvin's First Amendment claim was held to be foreclosed by her inability to distinguish her case from the "run-of-the-mine single-plaintiff discrimination case." *Id.* at 420. Distinguishing Yatvin's suit

from the NAACP's efforts in *Button*, the Seventh Circuit wrote further:

> [Yatvin's] lawsuit does not seek relief against pervasive or systemic misconduct by a public agency or public officials, and unlike the NAACP's litigation against school segregation, is not part of an overall effort by the plaintiff or by persons or groups allied with her to correct allegedly unlawful practices or bring them to public attention.

*Id.*

■ Similarly, Berndt has not distinguished his lawsuit against the City of Evanston from a routine "unfair discipline of a police officer" case. Inasmuch as Berndt has failed to back up his assertions regarding Evanston's alleged "systemic misconduct," his prior suit would not have helped or hurt anyone else in the world in a degree greater than the deterrent effect that every lawsuit has. By referring to Yatvin's case as "run-of-the-mine," the Seventh Circuit apparently requires that public employee lawsuits must directly affect a good number of people other than the actual litigants in order to qualify as a lawsuit of "public concern." *Cf. Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir.1990) ("The present case ... is one of potentially broad impact not only upon the multiple plaintiffs but also upon the public's welfare and safety.") Berndt's prior suit was thus not a matter of "public concern" sufficient to trigger the First Amendment protections afforded public employees.

As in this case, the plaintiff in *Connick v. Myers* engaged in expression which contained elements of both public and private concern. In *Connick*, an assistant district attorney was fired for insubordination for distributing a questionnaire to other attorneys in the office. The questionnaire concerned the office's transfer policy, office morale, the need for a grievance committee, the level of confidence in the attorneys' supervisors and whether employees felt pressured to work in political campaigns. Although the last issue was found to be a matter of "public concern," the Court nevertheless concluded that the questionnaire, on the whole, did not involve speech of public concern. In its view, "her survey ... is most accurately characterized as an employee grievance concerning internal office policy." *Connick*, 461 U.S. at 154, 103 S.Ct. at 1693. Similarly, Berndt's prior lawsuit "is most accurately characterized" as an "employee grievance" that conveys no more than that a single employee was wronged.

The only Seventh Circuit case Berndt cites in support of his argument that his prior lawsuit was a matter of public concern is *Auriemma v. Rice*, 910 F.2d 1449 (7th Cir.1990). *Auriemma*, however, is easily distinguishable from Berndt's prior lawsuit. *Auriemma* dealt with questions regarding the quality of the entire police force of the City of Chicago. In *Auriemma*, the plaintiffs alleged that wholesale changes in the highest police echelons had been made solely on a racial basis rather than on merit. Unlike Berndt's suit against Evanston, *Auriemma* actually dealt with pervasive and systemic misconduct, misconduct that could have endangered the public safety of a large metropolitan area.

■ Although Berndt's amended complaint does not rise to the level of "public concern," the court takes note of the moral strength of Berndt's position. Accepting Berndt's version of the facts as true, the court finds it most improper for a chief of police to retaliate against a police officer who challenged a suspension imposed on him due to his failure to make an unlawful arrest. The issue before this court, however, was whether Berndt had made out a cause of action under the First Amendment. The court is unaware of any statutory cause of action Berndt might have and none was brought to the court's attention.

## Conclusion

For the foregoing reasons, Defendant Jacobi's motion to dismiss is granted.