**Joseph R. ANDERER, Jr., Plaintiff,**

v.

**Chief Arthur L. JONES, Deputy Inspector Charles I. Grisham, Lt. Detective Mary K. Hoerig, Detective Mercedes Cowan, and City of Milwaukee, Defendants.**

No. 01–C–0668.

United States District Court,
E.D. Wisconsin.

Sept. 30, 2002.

William R. Rettko, Milwaukee, WI, for Plaintiff.

Jan A. Smokowicz, Rudolph M. Konrad, Milwaukee, WI, for Defendants.

## ORDER

STADTMUELLER, District Judge.

Plaintiff Joseph R. Anderer, Jr. ["Anderer"], a former police officer employed by the City of Milwaukee, filed a complaint against the defendants pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his Fourth and Fourteenth Amendment rights by arresting him without probable cause and his First Amendment rights by suspending him based upon statements that he made to the media following his arrest. The defendants have filed a motion for summary judgment, and the plaintiff has responded. For the rea-

sons stated below, the court will grant the defendants' motion for summary judgment.

## BACKGROUND

On April 17, 2001, Anderer, who was employed as a police officer for the City of Milwaukee, was dispatched to the Pump House Marina along the Milwaukee River in response to multiple citizen complaints that four juveniles had broken into several boats in the marina. After arriving at the scene, Anderer, in the company of two other police officers, apprehended the four juveniles. Three of the juveniles were placed in the squad car driven by the officers accompanying Anderer. The fourth juvenile, referred to as "J.R.," was placed in Anderer's squad car. All four juveniles were transported to the station house.

Upon arriving at the station house, a fourth officer removed J.R. from Anderer's squad car and noticed that J.R. had blood on his shirt and pants. The officer questioned J.R. as to the source of the blood. J.R. pointed to Anderer and alleged that Anderer hit him. An internal affairs investigation was initiated within the hour. Later that night, Anderer was arrested for physical abuse of a child and placed in jail for the remainder of the night. Anderer was released from jail the next day, suspended from the police department, and the matter was turned over to the Milwaukee district attorney's office for a determination as to whether Anderer would be prosecuted for the alleged juvenile assault. The district attorney eventually decided not to prosecute. The local media covered both J.R.'s arrest and the district attorney's decision not to prosecute. Media coverage reported the plaintiff's statements that he would retain an attorney.

## DISCUSSION

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 318, 106 S.Ct. 2548. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (1986).

### A. Fourth and Fourteenth Amendment Claim

The Fourth Amendment requires that all warrantless arrests be "reasonable," *Woods v. City of Chicago,* 234 F.3d 979, 995 (7th Cir.2000), *cert. denied,* 534 U.S. 955, 122 S.Ct. 354, 151 L.Ed.2d 268 (2001), *citing Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), an inquiry that depends on whether the arresting officer had probable cause to believe that the suspect had committed or was committing an offense. *Woods,* 234 F.3d at 995. "There is probable cause to arrest if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Driebel v. City of Milwaukee,* 298 F.3d 622, 643 (7th Cir.

2002) (citations omitted). Probable cause "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods,* 234 F.3d at 996 (citation omitted). Furthermore, "an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Driebel,* 298 F.3d at 643, *citing Woods,* 234 F.3d at 996. So long as the police have probable cause, they have no constitutional obligation to conduct a further investigation before making an arrest, even if sound police technique would have required such further investigation. *Woods,* 234 F.3d at 997, *citing Gramenos v. Jewel Cos., Inc.,* 797 F.2d 432, 440 (7th Cir.1986); *Spiegel v. Cortese,* 196 F.3d 717, 725 (7th Cir.1999) ("The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation.") (citation omitted).

The defendants argue that they had probable cause to arrest Anderer based upon J.R.'s statement that Anderer hit him, J.R.'s bloody nose, the period of time in which Anderer was alone with J.R. in his squad car, and Anderer's inability to explain the cause of J.R.'s nose bleed. Anderer argues that J.R. is not a credible witness because he made a baseless accusation of rape against another officer at approximately the same time he accused Anderer of hitting him.[1] Anderer argues that J.R.'s credibility is further weakened because J.R. admitted breaking into boats, that one of the officers knew J.R. to have a smart mouth, and because J.R. used profanity and swore several times at the offi-

cers. Anderer also argues that no other witness at the marina can corroborate J.R.'s allegation that Anderer hit him while placing J.R. into the squad car. In addition to attacking J.R.'s credibility, Anderer argues that although J.R. had a bloody nose, his face did not show any sign of trauma (e.g. there was no bruising) other than a split lip on the inside of J.R.'s mouth which may have been consistent with a crack caused by a dry lip, a bit lip, or a canker sore. Anderer admits that he was alone with J.R. for a period of time but denies that the period of time is relevant in light of J.R.'s statement that Anderer hit him while placing J.R. into the squad car. Anderer also admits that J.R. had a bloody nose and that Anderer could not explain what caused J.R.'s nose to bleed.

■■■ J.R.'s statement alone is an insufficient basis for probable cause. As the case law in this circuit emphasizes, the statement of one witness or victim is a sufficient basis for probable cause only where that witness is credible or the information is trustworthy. *See Driebel,* 298 F.3d at 643, *quoting Woods,* 234 F.3d at 996 ("[A] report from a single, *credible* victim or eyewitness can provide the basis for probable cause.") (emphasis added); *Pasiewicz v. Lake County Forest Preserve District,* 270 F.3d 520, 524–25 (7th Cir. 2001) (finding probable cause where there was no indication that two eyewitnesses were lying or that their information was not credible or accurate); *Hebron v. Touhy,* 18 F.3d 421, 422–23 (7th Cir.1994) (holding that a statement by evicted tenants against their former landlord, against

---

**1.** For the purposes of this summary judgment motion, the court accepts as true Anderer's statement that J.R. accused another officer of rape and the court further draws the inference in favor of Anderer that J.R.'s accusation of rape is untrue. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (1986) (stating that the court must resolve any doubt as to the existence of a material fact against the moving party and draw all reasonable inferences in favor of the non-movant). The inference that J.R.'s allegation of rape is untrue is reasonable because the officer accused of rape was never alone with J.R.

whom they might bear a grudge, is not sufficiently reliable to support probable cause and that police must accumulate more evidence to support an arrest); *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1247 (7th Cir.1994) (finding probable cause based on the uncorroborated statement of a paramedic where the officers had no basis to disbelieve the statement); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 439 (7th Cir.1986) (finding probable cause based on the uncorroborated statement of a grocery store security guard and stating that "[a] 'prudent' officer may balk if the person claiming to be an eyewitness strolls into the police station and describes a crime from long ago, or if the person leveling the accusation is babbling or inconsistent. When an officer has 'received information from some person-normally the putative victim or an eyewitness-*who it seems reasonable to believe is telling the truth,' Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir.1968), he has probable cause.") (emphasis added). Anderer raises serious issues concerning J.R.'s credibility by showing that J.R. made fanciful allegations against another officer. After all, if J.R. could manufacture one obvious lie against an officer, he might also manufacture a more plausible lie against a different officer. Without more than J.R.'s word, therefore, issues of fact exist as to whether a reasonable officer would have concluded there was probable cause to arrest Anderer.

The court pauses to note that Anderer's other bases for attacking J.R.'s credibility are not persuasive. Lying and burglary do not necessarily go hand in hand, especially where a burglar admits that he burgled. Robin Hood, after all, was an honest thief. Neither is J.R.'s youth a basis to disbelieve his allegation. *See Gerald M. v. J. Conneely,* 858 F.2d 378, 380–81 (7th Cir.1988) (finding probable cause based upon an uncorroborated ten-year-old's statement). Finally, J.R.'s "smart mouth" and use of profanity directed toward the officers cuts against Anderer: use of profanity, though impolite, does not hurt J.R.'s credibility but it does suggest a reason why an officer might backhand a suspect.

■ Although the court determines that J.R.'s statement, by itself, may not have been sufficiently reliable or trustworthy to provide a basis for probable cause, the surrounding circumstances, including blood on J.R.'s face and shirt and the time in which J.R. was alone with Anderer in Anderer's squad car, would have given a prudent police officer probable cause to arrest Anderer. Unlike J.R.'s allegation of rape against another police officer who had not spent any time alone with J.R., J.R.'s statement that Anderer hit him was consistent with the blood on J.R.'s face and shirt. The presence of the blood, as well as the time in which Anderer was alone in his squad car with J.R. and Anderer's inability to explain J.R.'s nose bleed, are not facts in dispute. To be sure, these facts alone do not establish that, more likely than not, Anderer actually hit J.R., but that is not the standard for probable cause. *See Driebel,* 298 F.3d at 643, *quoting Woods,* 234 F.3d at 996 (an officer's belief in the existence of probable cause "need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false"). J.R.'s statement, as unreliable as it may have been, the blood, the opportunity that Anderer had to hit J.R., and Anderer's inability to explain the cause of J.R.'s nose bleed, creates more than "bare suspicion" that Anderer hit J.R. *See Woods,* 234 F.3d at 996 (citation omitted). Based on the undisputed facts and the totality of the circumstances, the court finds that the defendants had probable cause to arrest Anderer.

Anderer alleges that an issue of fact exists as to whether J.R.'s injuries were consistent with being punched. Anderer presents affidavits from Identification Technicians who took pictures of J.R.'s injuries. (Brown Aff. at ¶¶ 4–6, 15–18, 24; Kathrein Aff. at ¶¶ 12–16, 24–5.) These witnesses state that there were no signs of trauma (e.g. no bruising) on J.R.'s face other than a cut on his inner lower lip which is consistent with a crack caused from a dry lip, a bit lip, or a canker sore. *Id.* Even without any bruising, however, J.R.'s bloody nose and split lip are marks sufficient to indicate that J.R. may have been hit. *Cf. Sheik–Abdi,* 37 F.3d at 1247 (finding probable cause based on paramedic's uncorroborated testimony that suspect struck his wife with his forearm even though the victim bore no contemporary markings of bodily harm). Along with the other factors mentioned above, probable cause requires no more.

Additionally, once an arresting officer has probable cause, the officer is not compelled by the Fourth Amendment to investigate the matter further before making an arrest. *See Woods,* 234 F.3d at 997 (citations omitted). Anderer alleges that the police should have investigated J.R.'s statement and his injuries more thoroughly before arresting Anderer. Specifically, Anderer alleges that the police officers did not thoroughly interview all of the possible witnesses at the marina, and the officers did not closely analyze J.R.'s injuries or send him to a doctor for an evaluation. Anderer also alleges that none of the witnesses at the marina who were interviewed saw Anderer hit J.R. Because the police officers already had probable cause without taking these steps, further investiga-

tion was not required under the Fourth Amendment. *Id.; Pasiewicz,* 270 F.3d at 525 ("Although the officers might have saved a law-abiding citizen considerable tumult by asking more questions or digging deeper into the case, the Fourth Amendment did not require them to do so."); *Spiegel v. Cortese,* 196 F.3d 717, 725 (7th Cir.2000) ("The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation.") (citation omitted); *Gramenos,* 797 F.2d at 442 ("[P]olice need not automatically interview available witnesses, on pain of the risk that a jury will require them to pay damages. Good police practice may require interviews, but the Constitution does not require police to follow the best recommended practices."). Even though no interviewed witness at the marina saw Anderer hit J.R., J.R.'s bloody nose, the time Anderer spent alone with J.R., and Anderer's inability to explain the cause of J.R.'s bloody nose are factors sufficient to supplement any possible lack of credibility in J.R.'s statement. An eyewitness account corroborating J.R.'s statement is not the only means by which the credibility of J.R.'s statement may be bolstered.[2]

In a suit for damages, if the bases for probable cause involve disputed issues of fact, they may be appropriately decided by a jury. *See Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir.1994); *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (7th Cir.1993); *Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985) *(en banc ) (plurality opinion ); Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1346–47 (7th Cir.1985). *But cf. Gramenos,* 797 F.2d at 438 (stating that *Llaguno* and

---

**2.** In fact, the parties dispute whether certain witnesses at the scene actually saw Anderer place J.R. into the squad car. (See, e.g., M. Jones Aff. at ¶ 3) (stating that he did not see any juvenile placed into any squad car). Eye-

witness corroboration from certain witnesses that Anderer hit J.R. while placing him in the squad car, therefore, may not even have been possible.

*Moore* were unusual cases). In this case, however, the factors which bolster the credibility of J.R.'s statement, and which establish probable cause, are not disputed, and summary judgment is appropriate. *See Maxwell,* 998 F.2d at 434 ("If the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists.") (citations omitted).[3]

### B. First Amendment Claim

Anderer alleges that Chief Jones and the defendant City reopened a criminal investigation against Anderer after a Milwaukee County Deputy District Attorney decided not to prosecute Anderer in connection with J.R.'s allegations. Anderer argues that Jones' decision to reopen an investigation was retaliation against Anderer for statements made by Bradley De-Braska, the Milwaukee Police Association ["MPA"] President, to a television reporter that Anderer was arrested without probable cause and that the MPA hoped that Anderer would sue the department.

The court need not determine whether statements made by DeBraska implicate Anderer's First Amendment rights because the court determines that DeBraska's statements are not protected by the First Amendment. The speech of a government employee warrants First Amendment protection if that speech "addresses a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether the employee's speech falls under the rubric of public concern must be determined "by the content, form, and context of a given state-

ment, as revealed by the record as a whole." *Id.* at 147–48, 103 S.Ct. 1684. Of these three factors, the content of the speech is most important. *See Campbell v. Towse,* 99 F.3d 820, 827 (7th Cir.1996).

■ Neither the statements made to the media, nor Anderer's subsequent lawsuit, address a matter of public concern; rather, the statements and Anderer's lawsuit merely address a private personnel dispute. Although the topic of arrest without probable cause involves a liberty interest important to our society, Anderer does not show any facts which demonstrate "pervasive or systematic" misconduct by the defendants. *See Yatvin v. Madison Metropolitan School District,* 840 F.2d 412, 420 (7th Cir.1988) (finding that a sex discrimination lawsuit did not address a matter of public concern where it was indistinguishable with a "run-of-the-mine single-plaintiff discrimination case" and where it did not seek relief against "pervasive or systematic misconduct"); *Berndt v. Jacobi,* 781 F.Supp. 553 (N.D.Ill. 1991) (finding that a police officer's lawsuit did not involve a matter of public concern where officer merely alleged one instance of improper discipline). In *Berndt,* a police officer alleged that he was improperly disciplined for failing to arrest someone without probable cause. 781 F.Supp. at 559. Although the officer's claim in *Berndt* implicated the same Fourth Amendment liberty interest which is implicated in the case at bar, the district court found that a single occurrence of unfair discipline did not show the "pervasive and systematic misconduct" necessary to trig-

---

**3.** The court adds one last comment regarding a minor theme mentioned briefly in Anderer's brief and in the television broadcast which Anderer attaches to his brief: Anderer's allegation that one of the internal affairs detectives had a grudge against Anderer related to some previous dispute does not affect the court's probable cause analysis. *See Gerald*

*M.,* 858 F.2d at 381 ("If probable cause exists, an arrest is not tainted because a police officer may dislike one of the actors in the underlying dispute, unless this is shown to be an important factor in the decision."). Anderer has not offered anything but innuendo and speculation on this point.

ger First Amendment protection. *Berndt,* 781 F.Supp. at 559–60, *citing Yatvin,* 840 F.2d at 418.

In this case, Anderer argues that De-Braska's statements had a direct bearing on police protection and safety in the City of Milwaukee by referring to a television newscast in which several Milwaukee Police Department officers indicated that they were afraid to work, especially burglary investigations, because they could become the target of an internal police investigation. (Plaintiff's Response to Defendants' Motion for Summary Judgment, at 75.) Anderer's argument, however, misses the point. Anderer must show how his speech or lawsuit, rather than the means of retaliation, involves underlying issues which could involve police protection or public safety. *See Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir.1990) *(en banc )* ("It would be difficult to find a matter of greater public concern in a large metropolitan area than police protection and public safety."); *Milazzo v. O'Connell,* 925 F.Supp. 1331, 1345 (N.D.Ill.1996) (finding that plaintiff failed to show that consultation with an attorney addressed a matter of public concern where plaintiff, arguing that retaliation may have a chilling effect, did not show that any other employees were in a position to sue on a matter of public concern). Anderer does not show or even allege that the police department pervasively and systematically arrests other people without probable cause. It is, therefore, difficult to imagine how statements that he, personally, was arrested without probable cause raises an issue that affects police protection or public safety in general. *Berndt* makes this same point by distinguishing *Auriemma* with the officer's lawsuit based on a single occurrence of unfair discipline:

> *Auriemma* dealt with questions regarding the quality of the entire police force of the City of Chicago. In *Auriemma,* the plaintiffs alleged that wholesale

changes in the highest police echelons had been made solely on a racial basis rather than on merit. Unlike Berndt's suit against Evanston, *Auriemma* actually dealt with pervasive and systematic misconduct, misconduct that could have endangered the public safety of a large metropolitan area.

*Berndt,* 781 F.Supp. at 560.

The court notes that media coverage of DeBraska's statements is relevant to, but not dispositive of, public concern. *See Zorzi v. County of Putnam,* 30 F.3d 885, 897 n. 11 (7th Cir.1994). As *Zorzi* states,

> [I]t is important not to equate the public's curiosity about a matter with the matter having societal ramifications. People may be interested in any number of aspects of the lives of public officials and employees, but that does not mean that such matter [sic] have societal ramifications. Conversely, the public may be extremely apathetic about certain matters of public concern....

30 F.3d at 897 n. 11, *citing Belk v. Town of Minocqua,* 858 F.2d 1258, 1263 n. 7 (citation omitted). In other words, DeBraska's statements do not address matters of public concern merely because they were aired in a television broadcast.

The court also notes that, like media coverage, Anderer's motive in authorizing DeBraska's speech is relevant to, but not dispositive of, public concern. *See Gustafson v. Jones,* 290 F.3d 895, 908 (7th Cir. 2002). The fact that a plaintiff may seek damages for alleged wrongs, for example, is not enough to keep an action from being a matter of public concern. *See Auriemma,* 910 F.2d at 1460. In this case, however, because DeBraska's statements address only the personal effect of the defendants' actions upon Anderer, Anderer's private interest shows that the statements are not a matter of public concern even though the subject may otherwise be of

interest to the public. *See Gustafson,* 290 F.3d at 908 (citations omitted).

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the action be and the same is hereby **DISMISSED** with prejudice.

The clerk is directed to enter judgment accordingly.