734 F.2d 1240
 Dennis ALTMAN, Plaintiff-Appellant,
v.
Peter F. HURST, Chief of Police of the City of Hickory
Hills, Ervin Kozicki, Mayor of Hickory Hills,
Illinois, and The City Council of the
City of Hickory Hills, Illinois,
Defendants-Appellees.
 No. 83-1868.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 24, 1984.
Decided May 18, 1984.
Rehearing and Rehearing En Banc Denied June 11, 1984.
 
 Stanley H. Jakala, Berwyn, Ill., for plaintiff-appellant.
 Vincent Cainkar, Louis F. Cainkar, Ltd., Chicago, Ill., for defendants-appellees.
 Before BAUER, WOOD, and POSNER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Dennis Altman appeals the grant of defendants' Rule 12(b)(6) motion dismissing his civil rights action brought pursuant to 42 U.S.C. Sec. 1983 against the chief of police, mayor, and city council of the city of Hickory Hills, Illinois. We affirm.
 
 
 2
 Plaintiff is a police sergeant employed by the city of Hickory Hills, Illinois. Defendant Hurst, the police chief, became upset with plaintiff, whom he suspected had encouraged another officer to appeal her suspension.[1] Plaintiff denies ever giving such succour or advice. Apparently unconvinced, Hurst reassigned plaintiff to a fixed post outside his office window in front of the police station. Plaintiff could not leave his post, even to go to the bathroom, without first requesting permission; nor was he reassigned indoor duty during inclement weather. At all times he was in full public view. After plaintiff filed his original complaint in the case at bar, defendants stepped up their campaign of harassment, reassigning him to foot patrol duty, denying him overtime opportunities, and re-scheduling his vacation time. Plaintiff seeks declaratory relief and damages for violations of his constitutional rights.
 
 
 3
 Plaintiff claims that defendants' punishment violated the due process clause of the fourteenth amendment. That amendment forbids any state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, Sec. 1. The starting point for analysis, then, is whether defendants deprived plaintiff of any cognizable "property" or "liberty" interest.[2]
 
 
 4
 A property interest arises for purposes of the due process clause, "if there are such rules or mutually explicit understandings that support [a] claim of entitlement to the benefit ...." Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Plaintiff cites 24 Ill.Rev.Stat. p 10-2.1-17 for the proposition that state law mandates a hearing prior to the imposition of disciplinary punishment. That provision, however, applies only to the removal, discharge, or suspension of a police officer. It does not require a pre-deprivation hearing prior to the imposition of departmental disciplinary sanctions or even a demotion.[3]
 
 
 5
 Plaintiff also asserts a longstanding, mutually explicit understanding between himself and the department that he would annually receive vacation time in April.[4] Even assuming that a cognizable property interest arises from such a de minimis loss,[5] it does not follow that plaintiff is due a predeprivation hearing. A balancing of interests must take place to determine whether a deprivation occurred without due process of law. The following factors must be balanced:
 
 
 6
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 7
 Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
 
 
 8
 Consideration of these factors leads to the conclusion that plaintiff was not deprived of any process due him. Plaintiff's asserted interest in an April vacation is trivial and insubstantial. While the rescheduling may have inconvenienced him and defeated an expectation interest, such is not the stuff of constitutional torts. Cf. Brown v. Brienen, 722 F.2d 360 (7th Cir.1983). On the other hand, the police department has a substantial interest in managing the day-to-day work schedules of its employees. Even assuming that the switch in vacation times was wrongful punishment, it would unduly burden the police to require them to give notice and an opportunity to respond to everyone whose schedules are rearranged for disciplinary reasons.
 
 
 9
 Our facts resemble those in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Court there found that the loss of an inmate's hobby kit by prison officials deprived him of a property interest. Nevertheless, the Court held that no cause of action was made out under section 1983 since the deprivation was not "without due process of law." Plaintiff could receive all the process he was due in a post-deprivation hearing; namely, a state tort action for wrongful deprivation of his property.[6] Thus, even assuming that plaintiff is due any process for his deprivation, state court remedies provide sufficient relief for purposes of section 1983.[7]
 
 
 10
 Plaintiff also contends that he has a liberty interest in his job assignment, overtime opportunities, and April vacation. The Supreme Court has held that even the loss of one's job does not amount to a deprivation of liberty so long as a person remains able to locate alternate employment. Paul v. Davis, 424 U.S. 693, 709-10, 96 S.Ct. 1155, 1164-65, 47 L.Ed.2d 405 (1976), reh. denied, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); Board of Regents v. Roth, 408 U.S. 564, 573-75, 92 S.Ct. 2701, 2707-08, 33 L.Ed.2d 548 (1972). This circuit has held that no liberty interest is implicated where a plaintiff is denied a promotion, since he remains free to seek alternate employment if dissatisfied with his job. Webster v. Redmond, 599 F.2d 793, 798 (7th Cir.1979), cert. denied, 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980). Whether defendants' treatment of plaintiff Altman is viewed as internal disciplining or a constructive demotion, the logic of Webster forecloses a finding that a liberty interest has been implicated.[8]
 
 
 11
 Last, plaintiff has failed to make out a substantive due process claim. The Supreme Court has made clear
 
 
 12
 that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially, his interest in freedom of speech.
 
 
 13
 Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).
 
 
 14
 Thus, plaintiff cannot be disciplined consistently with the due process clause in retaliation for the exercise of his first amendment rights. Even assuming however, that plaintiff was disciplined because he encouraged another officer to appeal her suspension and in retaliation for his filing of the instant law suit, it does not follow that those comments are protected by the first amendment.
 
 
 15
 The Supreme Court, in Connick v. Myers, --- U.S. ----, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), recently announced a test to determine when the first amendment protects the speech of public employees. It there held "that when a public employee speaks not as a citizen upon matters only of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." --- U.S. at ----, 103 S.Ct. at 1690. In Connick, an assistant district attorney was fired for insubordination for distributing a questionnaire to other district attorneys in the office. The questionnaire concerned office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns. The Court, finding that at least the last issue was one of public concern, nevertheless concluded that the questionnaire, on the whole, did not involve speech of public concern. Instead it characterized the questionnaire as an act of insubordination motivated by plaintiff's unhappiness over a planned transfer. Given the essentially "private motive" for the speech, plaintiff's firing was not actionable under section 1983. Similarly, Altman's conduct, to the extent it can be construed as speech, did not involve matters of public interest; rather, it concerned a private personnel dispute.[9] Moreover, Altman, unlike the plaintiff in Connick, was neither fired nor suspended. On these facts, Connick mandates affirming the dismissal of plaintiff's action.[10]
 
 
 16
 Although plaintiff's cause of action fails to state a claim upon which relief could be granted, this is nevertheless a disturbing case. Had plaintiff quit his job, a result defendants no doubt hoped to induce, his constructive discharge would have enabled him to maintain this action. See Brown v. Brienen, 722 F.2d 360, 365 (7th Cir.1983) (dictum); Bourque v. Powell Electrical Mfg. Co., 617 F.2d 61, 65 (5th Cir.1980). It may seem illogical and unfair to take away plaintiff's federal remedy because he insisted on toughing-out his ordeal. The constructive discharge cases cannot be distinguished by pointing to the loss of income attendant to such a job loss. The measure of real loss in such a situation need not be significant--plaintiff need not show that he has been unable to obtain comparable alternate employment to maintain an action.[11] On the other hand, the utility one obtains from a job does not derive exclusively from the amount of pecuniary remuneration received. Plaintiff, prior to the giving of his advice and the filing of his law suit, could take pride and pleasure in the supervisory responsibilities of his job. He may well have suffered a real, albeit psychic, loss through reassignment to "window watch" and foot patrol, even though his salary remained constant. Moreover, his human capital--measured in terms of opportunities for advancement--may well be impaired by defendants' decision to deny him responsible work assignments.
 
 
 17
 Despite our sympathy for plaintiff and our incredulity over some of the disciplinary measures imposed by defendants, we recognize that permitting him to maintain this action would open the federal floodgates to all manner of petty personnel disputes. Such disputes are best left to internal procedures established by employers and employees or, as here, where no such protection exists or where such procedures are inadequate, through state court adjudication. Since plaintiff remains in the employment of the Hickory Hills police department, there is no deprivation of a property or liberty interest cognizable under section 1983. Since plaintiff's speech, if such it was, did not involve matters of public concern, his first amendment rights have not been violated. Accordingly, the order of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Hurst also was upset by plaintiff's failure to timely report an incident involving the officer who was suspended
 
 
 [2]
 In reviewing the dismissal, we bear in mind that the district court could not grant defendants' motion unless it appeared beyond doubt that plaintiff could prove no set of facts which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957)
 
 
 [3]
 At most, plaintiff has been constructively demoted without a reduction in pay. This court has previously expressed doubts that such an action can be a deprivation of property. Lyznicki v. Board of Education, 707 F.2d 949, 951 (7th Cir.1983). In any event, the state legislature had demonstrated in other contexts that it knows how to draft laws that require pre-demotion hearings. See 121 Ill.Rev.Stat. p 307.14 (state troopers); 125 Ill.Rev.Stat. p 164 (county sheriffs)
 
 
 [4]
 Plaintiff does not claim any mutually explicit understandings that establish entitlement to particular job assignments or overtime opportunities
 
 
 [5]
 Plaintiff does not complain that he was denied vacation time--only that he was not permitted to take his vacation in April
 
 
 [6]
 Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), is distinguishable. The reason a post-deprivation state tort action did not there satisfy due process requirements was because appellant challenged an "establish[ed] state procedure" that destroyed his entitlement. Contrariwise, the alleged actions taken by defendants to alter plaintiff's vacation schedule were random acts which more properly fit within the rules enunciated in Parratt
 
 
 [7]
 We note that plaintiff does not assert a property interest arising out of contractual obligations contained in his employment contract
 
 
 [8]
 The mayor, when questioned by newspapers, apparently informed them that Altman was being disciplined. Such a comment, in and of itself, is not so defamatory and stigmatizing as to trigger a liberty interest. See Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), reh. denied, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); Hadley v. County of Du Page, 715 F.2d 1238, 1244 (7th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984)
 
 
 [9]
 Plaintiff's failure to report the incident involving the suspended officer after the police chief specifically asked for a complete review of the officer's performance can be characterized as insubordination
 
 
 [10]
 Several Supreme Court cases indicate that the first amendment protects a person's right to seek judicial redress of grievances. See Bates v. State Bar, 433 U.S. 350, 376 n. 32, 97 S.Ct. 2691, 2705 n. 32, 53 L.Ed.2d 810 (1977), reh. denied, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); NAACP v. Button, 371 U.S. 415, 429, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963). A close reading of these cases clearly shows that the Court was concerned about political expression and not the general right to bring suit in a federal court of law. See, e.g., Button, 371 U.S. at 429, 83 S.Ct. at 336. ("In the context of NAACP objectives, litigation is not a technique of resolving private differences; it is a means of achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country. It is thus a form of political expression.") This formulation dovetails with the Connick rule that limits the first amendment protection given public employees to pronouncements on public issues. Thus, a private office dispute cannot be constitutionalized merely by filing a legal action
 
 
 [11]
 Such evidence would, however, influence a determination of the amount of damages arising out of the deprivation