Annmarie MILAZZO, Plaintiff,

v.

Donald P. O'CONNELL, Margaret
Kostopulos, and Dawn Catuara,
Defendants.

No. 95 C 5342.

United States District Court,
N.D. Illinois,
Eastern Division.

April 26, 1996.

**1336**

John M. Beal, Chicago, IL, for plaintiff.

Jerold Sherwin Solovy, Ada Sheryl Cooper, Teri Lynn Firmiss, Jenner & Block, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Annmarie Milazzo brings this action pursuant to 42 U.S.C. § 1983 and state common law against defendants Donald P. O'Connell, the Chief Judge of the Circuit Court of Cook County, Illinois; Margaret Kostopulos, the Administrative Director of the Office of the Chief Judge; and Dawn Catuara, the Administrative Assistant to the Chief Judge.[1] The suit stems from Milazzo's abrupt employment termination by the defendants, and contains federal claims under the First and Fourteenth Amendments (Counts I–III), and a state law claim for retaliatory discharge (Count IV). The defendants have moved for dismissal of all counts pursuant to Federal Rule of Civil Procedure 12(b)(6).

### RELEVANT FACTS[2]

Milazzo began working for the Circuit Court of Cook County on March 1, 1985, first as a secretary to the Executive Officer in the Office of the Chief Judge ("Office"), and then as a caseworker in the Social Services Department of the court. In August 1989, she began serving as a court coordinator in the Personnel Department of the court. In 1990, she was named to the position of Administrator of the Personnel Department. Milazzo held this title (now Administrator of the Human Resources Department) until her termination in 1995.

Milazzo's duties were to implement the personnel policies adopted by the Chief Judge and his immediate staff. These duties included administering the summer job program for the Office, a task that involved receiving the applications and preparing summaries of them for the Chief Judge to use in deciding which applicants to hire. Another portion of her duties in administering the department involved working on the preparation of the budget for the Office, working with the Executive Officer on budget and payroll account issues generally, and participating in the initiation of a computer networking system linking the human resources sections of all the divisions of the court under the authority of the Office.

Milazzo alleges that she was not accorded and did not exercise any autonomous or discretionary authority in the performance of these duties. As an example, the Chief Judge or his immediate staff were required to approve in advance any communication written by Milazzo that was intended to be sent to other employees.

Judge O'Connell became the Chief Judge of the Circuit Court on December 5, 1994. Over the course of the next eight months, Judge O'Connell had frequent contact with Milazzo in the performance of her duties. At no time did Judge O'Connell criticize her

---

1. The defendants are sued in both their official and individual capacities. As Milazzo recognizes, however, defendants are immune from suit in their official capacities. *See Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir.1992), *cert. denied*, 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993) (monetary claims against a state are barred by the Eleventh Amendment, so state officials may not be sued for damages in federal court in their official capacities); *Orenic v. State Labor Relations Bd.*, 127 Ill.2d 453, 476, 130 Ill.Dec. 455, 466, 537 N.E.2d 784, 795 (1989) (employees of the Office of the Chief Judge are

employees of the State of Illinois). Accordingly, the claims against the defendants in their official capacities are dismissed, and the remainder of this opinion will address the individual-capacity claims only.

2. These facts are drawn from the allegations in Milazzo's complaint, which we are bound to accept as true when considering a motion to dismiss. *See Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996).

performance, although he allegedly sought to eliminate testing and interviewing procedures and replace them with political sponsorship requirements for employment, and in June 1995 Judge O'Connell and Catuara took over the receipt of the summer job applications from Milazzo, again allegedly in order to assure that applicants' political sponsorship was taken into account. Milazzo alleges that throughout this period she properly and satisfactorily administered the Human Resources Department.

On July 12, 1995, Catuara called Milazzo into her office and told Milazzo that Judge O'Connell had decided to transfer everyone in the Human Resources Department. Milazzo was to be transferred to the Social Service Department at the Criminal Courts Building as a PS2 caseworker, a classification that carried a salary $14,000 lower than Milazzo's then current salary.

Milazzo consulted with an attorney regarding this pending demotion and her legal options. The attorney contacted the Chief Judge's Office. On July 17, 1995, Kostopulos informed the attorney that the decision to transfer and demote Milazzo would not be reconsidered. The following day, Milazzo met with Kostopulos and told Kostopulos that, upon the advice of her attorney, Milazzo was accepting the caseworker position "under protest." Milazzo was told to report to her new job two weeks from then. Milazzo returned home after the meeting, where she was telephoned by Kostopulos, who said Judge O'Connell wanted to know what "under protest" meant and whether Milazzo would accept the position "without reservations." Milazzo stated that while she was not happy about the cut in salary, she had always given 100% at her job and would continue to do so. The next day, Milazzo received a letter stating that her employment with the Circuit Court was terminated.

Milazzo's suit against Judge O'Connell, Catuara and Kostopulos contains four counts, the first three of which are brought pursuant to federal civil rights laws.[3] Count I alleges that Milazzo's firing violated procedural due process, because the Office's personnel policy manual and its custom and practice provided that discharges should be preceded by disclosure of the charges made, factual findings, and an opportunity for a hearing, yet Milazzo was terminated without any of these things. Count II alleges that Milazzo was fired based on her political affiliation, in violation of her rights under the First Amendment. Count III claims that Milazzo was fired in retaliation for consulting an attorney, also in violation of her First Amendment rights. Count IV alleges the same retaliation for consulting with an attorney, but is brought on a state common law theory of retaliatory discharge. The defendants have moved to dismiss all counts for failure to state a claim.

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Associates, Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). When considering a motion to dismiss, the court views all facts alleged in the complaint, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). In short, the only question is "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v.*

---

**3.** One of the grounds upon which the defendants seek dismissal is that Milazzo fails to identify the federal statute under which she brings Counts I through III (presumably 42 U.S.C. § 1983). A complaint should not be dismissed if there is any set of facts that would support a claim entitling the plaintiff to relief; the complaint need not identify a legal theory, and even "specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). Milazzo has alleged facts which would meet the pleading requirements of § 1983, at least insofar as she has stated valid constitutional violations, as discussed below. Therefore, her complaint may not be dismissed for failure to mention § 1983.

*Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992) (citations omitted).

### ANALYSIS

#### Count I: Procedural Due Process

"Procedural due process claims require a two-step analysis. The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982)). At issue here is the first step: whether Milazzo had a protected property interest in her continued employment with the Circuit Court such that her abrupt termination required due process.

To establish that she had a protected property interest in continued employment, Milazzo must show that she had an entitlement to her job under Illinois law. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) ("the claim of entitlement must be decided by reference to state law"). In Illinois, there is a legal presumption that employment for an unspecified term is employment at will, a relation that is terminable by either party at any time for any reason. *See Duldulao v. St. Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 11–12, 505 N.E.2d 314, 317–18 (1987). Employment at will does not give rise to a property interest protected under the due process clause. *Campbell v. City of Champaign,* 940 F.2d 1111, 1112 (7th Cir.1991) (citing *Simpkins v. Sandwich Community Hosp.,* 854 F.2d 215, 218 (7th Cir. 1988)). As Milazzo has not alleged that she was hired to her position for a fixed period of time, her employment is presumed to be at will and she cannot bring a due process claim for the loss of her job unless she has alleged some exception to the at-will rule.

Milazzo's first approach to the requirement of demonstrating a protectible property interest in her employment is to argue that some combination of the personnel policy manual promulgated by the Office of the Chief Judge, and the Office's alleged custom and practice of discharging employees only after notice and a hearing, together created "mutually explicit understandings" that gave rise to a protectible property interest in employment. *See* Complaint ¶¶ 25–27; *Duldulao,* 115 Ill.2d at 490, 106 Ill.Dec. at 12, 505 N.E.2d at 318 (policy manual may demonstrate an agreement that employees will be fired only for cause); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (property interests "are defined by existing rules or understandings that secure certain benefits").

This argument is untenable for a variety of reasons, only one of which need be cited here: the express language of the manual that is the heart of the argument. The manual states, in bold print on every page, **"Employees of the Chief Judge are employed at the will of the Court. This personnel policy & procedure manual is not intended to alter the employment-at-will relationship."** Def.s' Mem. in Support of Motion to Dismiss, Ex. B.[4] The very first sentence in the manual is, **"THE POLICIES ARTICULATED IN THIS MANUAL ARE NOT TO BE CONSTRUED AS A CONTRACTUAL STATEMENT."** *Id.* at 1–1. Thus, it is evident that the manual itself does not create contractual rights to permanent employment under *Duldulao.*

Further, the section of the manual covering the procedures to be implemented before discharging employees (section 8.5) is full of language negating any promise that such procedures will be applied in a specific case:

> [D]ischarge **may** be given for an infraction serious in nature or when there has been

---

**4.** In citing to the manual, we are not going beyond the bounds of the complaint, to which our analysis must be confined upon a motion to dismiss. *See* FED.R.CIV P. 12(b); *Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir.1989). Although Milazzo did not attach the manual to her complaint, she refers to it, *see* Complaint ¶¶ 25–27, and appears to rely on it in support of

her procedural due process claim (Count I). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

previous corrective action. A recommendation for a suspension in excess of thirty (30) days or discharge **should** be documented on a Corrective Action Form by the immediate supervisor.... After reviewing all relevant documentation, the Executive Officer/Designee **should** hold a conference with the employee, immediate supervisor, and any other persons deemed necessary.

*Id.* at 8–2 (emphasis added). This language is exhortatory, not mandatory. The manual's promises (if indeed they are such) that formal disciplinary procedures will precede discharge are further weakened by section 8.7, which states: "In most cases, the aforementioned steps will be followed. However, any departure from these steps will not invalidate any corrective action." *Id.* at 8–3. Thus, even taking as true Milazzo's allegation that it was the usual custom of the Office not to discharge employees without notice of the charges and an opportunity to be heard (among other procedures), the manual informed Milazzo that those procedures might not be applied in every case, and thus that she had no right to those procedures.

■ If, as this language states, the employer could choose to disregard the formal discharge procedures without consequences, then the manual's "promise" of notice and a hearing before discharge is illusory, and cannot establish any property rights to for-cause discharge or permanent employment. "When the policy manual can vanish with a wave of the administrator's wand, or when the administrator is free to disregard his own words, the [plaintiff] has nothing of substance and therefore neither liberty nor property." *Miller v. Henman,* 804 F.2d 421, 425 (7th Cir.1986), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987). In the face of these express disclaimers, it is clear that the manual—even in conjunction with the Office's alleged customary practice of providing pre-discharge notice and a hearing—did not give Milazzo "the sort of secure and dependable interest fairly describable as an entitlement" to her job. *Campbell v. City of Champaign,* 940 F.2d at 1112 (plaintiff who served "at the pleasure of the City Manager" did not have a protectible property interest in her job).

■ Perhaps recognizing the weakness of her first argument, Milazzo attempts to pursue another way out of the at-will quicksand. In her response brief to the defendants' motion to dismiss, she submits "the following facts that are as yet hypothetical, but consistent with the explicit allegations in the complaint": in December 1994, shortly after Judge O'Connell's ascension to Chief Judge, Milazzo met with him to seek assurance about her job future, and Judge O'Connell orally promised her that she could stay on in her current position at the same salary, so long as she performed at the level she had in the past. Milazzo contends that this promise was in essence a promise to terminate her only for good cause, and that it changed the terms of her employment from at-will to permanent.[5] Milazzo asserts that this oral promise is enforceable under the theories of implied contract and/or promissory estoppel; the implication is that a promise to terminate only for cause that is definite enough to be legally enforceable under state law gives rise to a property interest in her employment that would be protectible under the Fourteenth Amendment.

■ As a threshold matter, the defendants protest that Milazzo should not be permitted to assert new facts to bolster her complaint in her response to their motion to dismiss, citing among other cases *Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"), and *Car*

---

**5.** "Permanent employment," as that phrase is used in Illinois law, is not limited to offers for lifetime employment. It also includes other employment for an indefinite term that is not at-will, such as employment in which termination is for just cause only or in which the employee may work as long as she wishes or as long as she performs the job. *See, e.g., Martin v. Federal Life Ins. Co. (Mut.),* 268 Ill.App.3d 698, 205 Ill.Dec.

826, 644 N.E.2d 42 (1st Dist.1994) (using "permanent employment" in discussing offer that employee "could have a job as long as he wanted"); *Wilder v. Butler Mfg. Co.,* 178 Ill.App.3d 819, 128 Ill.Dec. 41, 533 N.E.2d 1129 (3d Dist.1989) (describing claim that employer promised employee that she would have a job "as long as [she] produced" as a claim of permanent employment).

*Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984) (same), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). While much precedent supports this argument, our appellate court has also taken a somewhat different stance in several cases, including some recent decisions. *See, e.g., Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 439 (7th Cir.1994) ("This court has held that when reviewing Rule 12(b)(6) motions, we will consider new factual allegations raised for the first time on appeal provided that they are consistent with the complaint"); *Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963–64 (7th Cir.1992) ("A plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief—even a brief on appeal."); *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992) (a party may defend against a motion to dismiss by alleging facts in its brief in opposition to the motion).

These diametrical approaches are difficult to reconcile, but a careful reading indicates that the key distinguishing factor may be whether the plaintiff's response brief alleges new *facts* (which is permissible if they are consistent with the complaint) or whole new *claims* (which may be impermissible). *See Dausch v. Rykse,* 52 F.3d 1425, 1428 n. 3 (7th Cir.1994) ("The facts asserted in the memorandum in opposition to the motion to dismiss, but not contained in the complaint, are relevant to the extent that they 'could be proved consistent with the allegations.'").

Here, the relevant claim is Milazzo's claim of a procedural due process violation. That claim remains the same. What has changed is the facts and legal theories supporting one element of this claim, the element of a protectible property interest in her employment. Milazzo appeared to allege in her complaint that the property interest arose out of the policy manual, whereas now she argues that it could also have arisen from an oral promise made by Judge O'Connell.

■ We find the words of Judge Easterbrook in *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992), instructive here: "A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents." We believe this approach harmonizes best with the spirit of the Federal Rules of Civil Procedure. Milazzo's complaint adequately describes her procedural due process claim, and she is not forbidden from alleging new facts, or even new legal theories about that claim, in her response brief.

■ Unfortunately for Milazzo, however, the premise of her newly asserted theory fails. The oral promise that she now says Judge O'Connell made cannot support a claim of either implied contract or promissory estoppel under Illinois law, and so does not give rise to a property interest protected by the Due Process Clause.

■ In Illinois oral contracts for employment are viewed more skeptically than written contracts, *Smith v. Board of Education,* 708 F.2d 258, 263 (7th Cir.1983), and the analysis of such contracts is "more scrutinizing." *Maher v. Con–Way Intermodal, Inc.,* No. 92 C 2863, 1993 WL 243319 at *6 (N.D.Ill. June 30, 1993). "In order for an employee to show that [her] employer made a binding oral contract for permanent employment, the employee is required to prove that the employer made clear and definite oral promises as to the terms and duration of the employment, and that there was sufficient consideration for the promise." *Id.* (citing *Eastman v. Chicago, Cent. & Pac. R.R. Co.,* 930 F.2d 1173, 1177 (7th Cir.1991)). The promise as described by Milazzo may fail the first requirement, that it contain clear and definite terms. We do not reach this issue here, however, as the claim fails on other grounds: the second element, adequate consideration, is missing.

■ The Seventh Circuit has noted that "Illinois courts will enforce an oral promise to employ a person for life or some other equally indefinite length of time only if the employee makes in return some sacrifice ... that he probably would not have made absent a guarantee of continued permanent employment." *Smith v. Board of Educ.,* 708 F.2d at 263. This "sacrifice" provides the consideration for the employer's promise. Generally, the mere agreement to continue working in the present job at the present level of effort has not been held to be suffi-

cient consideration for such a promise. *See id.* ("Under Illinois law an oral promise of permanent employment given in exchange for a promise to work is unenforceable") (citing *Heuvelman v. Triplett Electrical Instr. Co.,* 23 Ill.App.2d 231, 235, 161 N.E.2d 875, 877 (1st Dist.1959)); *Lamaster v. Chicago & N.E. Ill. Dist. Council of Carpenters Apprentice & Trainee Program,* 766 F.Supp. 1497, 1501 (N.D.Ill.1991) ("a mere promise to perform the services of employment alone cannot support a contract for permanent employment"). Nor is "merely waiving the right to pursue or accept alternative employment opportunities" adequate consideration. *Lamaster,* 766 F.Supp. at 1502. Only if (1) the employee forgoes a real and favorable job offer from another employer or gives up a secure position elsewhere, and (2) that sacrifice is expressly made in return for the promise of permanent employment (*i.e.,* "specially bargained for"), will courts enforce an oral promise of permanent employment. *Id.* at 1501–03.

Here, the facts "hypothesized" by Milazzo in her response brief state only that she was promised continued employment at her existing salary in exchange for "performing her job at the level she had performed at in the past." Pl.'s Resp.Br. at 6. She does not claim to have given up any concrete offers of employment elsewhere, or allege any return promise on her part for any other type of additional consideration. As noted earlier, a promise to continue working at the same level is not sufficient consideration to support an oral promise of permanent employment under Illinois law. Thus, Milazzo's theory that the oral promise created an implied contract must fail.

■■■■■ This theory also fails because of the Statute of Frauds, 740 ILCS § 80/1 (1995). The Statute requires a writing memorializing any contract that is not capable of being performed within one year; if there is no such writing, then the contract is not legally binding. *See Sinclair v. Sullivan Chevrolet Co.,* 45 Ill.App.2d 10, 14, 195 N.E.2d 250, 252 (3d Dist.), *aff'd,* 31 Ill.2d 507, 202 N.E.2d 516 (1964). Illinois cases evidence some disagreement over how the Statute applies to contracts for permanent employment. Some cases hold that an oral contract in which the employment may be terminated upon the occurrence of a contingency (such as the employee failing to perform her duties or wishing to leave) is capable of performance within a year and thus is not barred by the Statute. *See, e.g., Vajda v. Arthur Andersen & Co.,* 253 Ill.App.3d 345, 357, 191 Ill.Dec. 965, 973, 624 N.E.2d 1343, 1351 (1st Dist.1993). Others hold that the applicability of the Statute depends on the nature of the contingency, and whether the occurrence of the contingency would frustrate performance of the contract or complete the contract. *See, e.g., Lamaster,* 766 F.Supp. at 1506–09; *Cohn v. Checker Motors Corp.,* 233 Ill.App.3d 839, 844, 175 Ill.Dec. 98, 102, 599 N.E.2d 1112, 1116 (1st Dist.1992). For instance, with a promise to employ someone for as long as he wanted, the full term contemplated by the parties has been completed once the contingency occurs (the employee wishes to leave or retire). Thus, the promise is capable of performance within one year and is not within the Statute. *See Lamaster,* 766 F.Supp. at 1508–09. By contrast, with a promise to employ someone as long as he meets the job requirements, the occurrence of the contingency (the employee's failure to meet the requirements) frustrates and cuts off the continuing performance of the contract. Thus, even if the contingency occurs within one year, the contract has not been *performed, i.e.* completed, within the year, and so the Statute applies to bar such contracts unless they are memorialized in writing. *Cohn,* 233 Ill.App.3d at 844, 175 Ill.Dec. at 102, 599 N.E.2d at 1116.[6]

Although there is no sign that this split has been resolved by the Illinois courts, the

---

**6.** This distinction has been applied outside the employment context as well. *See Electronic Replacement Svc. Inc. v. ITT Hartford Ins. Co.,* No. 95 C 1469, 1995 WL 560913 at *3 (N.D.Ill. Sept. 18, 1995) (a requirements contract in which the defendant promised to buy goods from the plaintiff unless the defendant had a "valid and legitimate reason or basis to stop" was unenforceable under the Statute of Frauds because the occurrence of the contingency would frustrate and cut off performance of the contract rather than completing it; citing *Lamaster* and *Cohn,* among other cases).

Seventh Circuit appears to have adopted the latter approach. *See Taylor v. Canteen Corp.,* 69 F.3d 773, 785 (7th Cir.1995) ("We are persuaded ... by Judge Moran's thoughtful analysis in *Lamaster*"). It is somewhat unclear why the difference between an employer's promise to extend employment as long as the employee wishes, and a promise to extend employment only so long as the employee performs competently, should require the latter but not the former to be evidenced by a writing. There is no doubt, however, that we must follow our appellate court. Milazzo's implied oral contract theory fails because of the Statute of Frauds as well as for lack of adequate consideration.

Milazzo next argues that the promise allegedly made by Judge O'Connell is enforceable under a promissory estoppel theory. A claim of promissory estoppel has four elements under Illinois law: (1) an unambiguous promise; (2) reliance on the promise; (3) the reliance was expected and foreseeable; and (4) the reliance caused the promisee some detriment or injury. *See Quake Constr., Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 309–10, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990). The defendants contend that Milazzo's promissory estoppel argument is defective on several of these points, including that the promise was not unambiguous, that Milazzo's reliance was not reasonable or foreseeable, and that her reliance did not cause her any detriment. We bypass these contentions because the promissory estoppel argument is defective for another reason: as with the oral contract theory, the Statute of Frauds bars Judge O'Connell's oral promise from being enforceable under a promissory estoppel theory. *See First Nat'l Bank v. McBride Chevrolet, Inc.,* 267 Ill.App.3d 367, 373, 204 Ill.Dec. 676, 680, 642 N.E.2d 138, 142 (4th Dist.1994) ("Promissory estoppel is not an exception to the Statute of Frauds.").

Milazzo has not alleged any viable source of a property interest that would be protect-

ed by the Fourteenth Amendment, either from the Office's policy manual and its customs and practices, or from the oral promise which Milazzo now alleges Judge O'Connell made to her. Accordingly, Milazzo cannot make out a procedural due process claim for the deprivation of her job, and we dismiss Count I of the complaint.

*Count II: First Amendment/Patronage Hiring*

Milazzo alleges in the second count of her complaint that she was terminated because of her political affiliation and because she lacked a political sponsor, and that this violated her First Amendment rights of association. In *Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976), the Supreme Court held that a public employer's decision to terminate employees on the grounds of political affiliation unquestionably infringes employees' First Amendment rights.[7] Therefore, the public employer must enunciate a compelling interest that would justify the infringement. *Id.* at 363, 96 S.Ct. at 2685 ("to survive constitutional challenge, [the political affiliation requirement] must further some vital governmental end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights"). When the dismissed employee occupied a policy-making position, the need for political loyalty to prevent the undercutting of the new administration's policies can be such a "vital governmental end." *Id.* at 367, 96 S.Ct. at 2687. Accordingly, the inquiry becomes whether the dismissed employee occupied a policy-making or confidential position or, as it was phrased in *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980), "whether the hiring authority can demonstrate that party [or other political] affiliation is an appropriate requirement

---

7. This may be so even though an employee has no protected property interest in her job for due process purposes. *See Elrod,* 427 U.S. at 360–61, 96 S.Ct. at 2683 ("even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely") (quoting *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)).

for the effective performance of the public office involved."

The defendants bear the burden of establishing that Milazzo's position falls within the exception created in *Elrod* and *Branti. Nekolny v. Painter*, 653 F.2d 1164, 1169 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982) (citing *Elrod*, 427 U.S. at 368, 96 S.Ct. at 2687). This burden is difficult for a defendant employer to carry in the context of a motion to dismiss, in which the court must take its cue from the plaintiff's allegations. Nevertheless, it is possible that a plaintiff may plead particulars that show she has no claim. In that case, she has pleaded herself out of court. *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir.1994).

The defendants claim that is the case here. They urge that it is clear from the face of the pleadings[8] that Milazzo's duties as Director of Human Resources included input into the policy-making process and the implementation of such policy as it affected hiring decisions. Defendants point to allegations that Milazzo's duties included implementing the Chief Judge's hiring policies, providing the Chief Judge with information, and working with the Executive Officer on budget and payroll issues. Compl. ¶¶ 10, 13, 18. Defendants argue that these tasks indicate that, as a matter of law, Milazzo held a confidential or policy-making position.

Milazzo counters by pointing out that her complaint explicitly alleges that she "was not accorded nor did she exercise in the performance of her duties autonomous or discretionary authority," *id.* ¶ 10, and that the defendants supervised her closely and were required to approve her contacts with others. *See id.* ¶¶ 10–18. We find that, taken all together, the allegations of her complaint fairly present a picture of an employee whose actual work was largely and perhaps wholly ministerial, who may have personally disagreed with her new employer's policies regarding the importance of political sponsorship in hiring decisions but who obediently carried out those policies.[9]

The defendants correctly note that, in evaluating the nature of Milazzo's position, we must look to the responsibilities of the position itself, not to the specific duties that Milazzo may have actually exercised in that position. *See Tomczak v. City of Chicago*, 765 F.2d 633, 640 (7th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985) ("*Elrod* and *Branti* require examination of the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office"). This statement only highlights the difficulty of making a determination about whether a particular position should be characterized as policy-making or confidential in the context of a motion to dismiss, however, for the only data we have about the general powers inherent in the office of Director of Human Resources are the allegations of the complaint, which focus on the work performed by Milazzo rather than the general duties of her position.

The Seventh Circuit has recognized that the applicability of the policy-making exception is a difficult issue to resolve on a motion to dismiss. *See Nekolny v. Painter*, 653 F.2d at 1169–70 (reversing a district court's finding that as a matter of law a position was policy-making, and stating that whether political loyalty is a legitimate requirement for a given position is a factual question or a "matter of proof"); *Meeks v. Grimes*, 779 F.2d 417, 419 (7th Cir.1985) (noting the difficulty of assessing the functional attributes of a position because "not only do job classifications and personalities vary in each case, but also there are substantial differences be-

---

8. In addition to arguing from the complaint itself, both parties have attempted to bring documents that are outside the scope of the complaint to our attention, *viz.*, lists of "key" employees in the Chief Judge's Office on which Milazzo's name either does or does not appear. "Courts are restricted to an analysis of the complaint when evaluating a motion to dismiss," *Hill v. Trustees of Indiana Univ.*, 537 F.2d 248, 251 (7th Cir.1976), and neither party has asked us to convert this motion into one for summary judgment. Thus, we have not considered the extra material in deciding the motion before us.

9. We accept this characterization of the facts for purposes of this motion, of course, but express no opinion on whether it will ultimately be supported by the evidence.

tween governmental bodies and between individual departments or units within a given governmental body"); *Soderbeck v. Burnett County*, 752 F.2d 285, 288–89 (7th Cir.) (refusing to hold that the issue of whether a position is policy-making or confidential is a matter of law), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). Indeed, because this inquiry is a factual one, it may be difficult to resolve even on a motion for summary judgment, unless the evidence presented is so one-sided that no reasonable jury could find in favor of the plaintiff.

■ Crediting Milazzo's allegations, as we must at this stage of the case, we cannot say that it is clear as a matter of law that her position was policy-making or confidential in nature. The title of her former position is suggestive of policy-making power, but the title alone cannot be dispositive: the *Elrod/Branti* line of cases "is concerned with function, not label." *Gannon v. Daley*, 561 F.Supp. 1377, 1385 n. 22 (N.D.Ill.1983). Accordingly, the resolution of this issue must await the development of the evidence, and we deny the defendants' motion to dismiss Count II.

*Count III: First Amendment/Retaliatory Discharge*

■ In Count III, Milazzo alleges that the defendants terminated her in retaliation for her consultation with and retention of an attorney to defend her rights as an employee, and that the termination infringed her First Amendment rights of "association to consult with an attorney." Compl. ¶¶ 44–45. Both parties have had difficulty in identifying the law applicable to such a claim. In their motion to dismiss, the defendants suggested that the claim was a variant of the common situation in which an employee alleges that he or she was fired for speaking out on an issue, governed by cases such as *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Griffin v. Thomas*, 929 F.2d 1210 (7th Cir.1991). In her response, Milazzo de-

nied this characterization of her claim and instead described it as a claim of denial of access to counsel and the courts, citing *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1545, 134 L.Ed.2d 648 (1996), *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir.1985), and *Owens v. Rush*, 654 F.2d 1370 (10th Cir.1981).[10] A claim such as that raised in *Vasquez* would not work here because Milazzo's access to counsel and the courts has not, in fact, been obstructed as it was in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984), the case on which *Vasquez* was based. In *Bell*, the police conspired to successfully cover up the wrongful shooting of the plaintiff's decedent for over twenty years, thus preventing his estate from bringing an action in court. The Seventh Circuit held that "[t]he Fourteenth Amendment entitles an individual to a fair opportunity to present his or her claim." *Id.* at 1261. By contrast, in *Vasquez* the Seventh Circuit held that this Fourteenth Amendment right to "a fair opportunity to present a claim" had not been infringed where the police coverup at issue was unsuccessful and only delayed the plaintiff's lawsuit by six months without prejudicing her ability to recover in any manner. *Vasquez*, 60 F.3d at 329. Here, where Milazzo can point to no actual obstruction of her access to the courts, she cannot recover on such a theory.

■ It appears to us that the line of cases most relevant to the substance of Milazzo's claim is a slightly different one, the line of cases begun in this circuit with *Altman v. Hurst*, 734 F.2d 1240 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984), and continued in *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412 (7th Cir.1988), *Auriemma v. Rice*, 910 F.2d 1449 (7th Cir.1990) (en banc), *cert. denied*, 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991), *Marshall v. Allen*, 984 F.2d 787 (7th Cir.1993), and *Zorzi v. County of Putnam*, 30 F.3d 885 (7th Cir.1994). These cases all concern complaints by public employees that they had been retaliated against

**10.** Milazzo also cited to *Rager v. Boise Cascade Corp.*, No. 88 C 1436, 1989 WL 31469 (N.D.Ill. March 23, 1989), but that case concerned a state law claim for retaliatory discharge, not a federal civil rights claim.

by their employers for participating in the filing of a lawsuit against the employer, either by themselves or fellow employees. The cases hold that retaliation against a government employee for filing a lawsuit may be prohibited—by the First Amendment's protection of the rights of free speech and to petition for the redress of grievances, not by a separate right of access to the courts. *Zorzi*, 30 F.3d at 896.

The situation presented in the *Altman* line of cases is not identical to that in *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983): in *Pickering* and *Connick* the retaliation was for the employee's speech against the employer, whereas in *Altman*-type cases (as here) it is for the employee's participation in the filing of litigation against the employer. Nevertheless, the Seventh Circuit has imposed the requirement that, in order to recover in *Altman*-type cases, a plaintiff employee must show that the lawsuit that triggered the adverse employment action concerned a matter of public interest, not merely the personal grievances of the employee—a "public concern" requirement that is drawn directly from *Pickering* and *Connick*. That is because *Altman* and its progeny take guidance from *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), and related Supreme Court cases which hold that association in order to seek judicial redress of grievances is a form of political expression. *See, e.g., Button*, 371 U.S. at 429, 83 S.Ct. at 336 ("In the context of NAACP objectives, litigation is not a technique of resolving private differences; it is a means of achieving the lawful objectives of equality of treatment by all government ... for the members of the Negro community in this country. It is thus a form of political expression.") (*quoted in Altman*, 734 F.2d at 1244 n. 10). Because the *Pickering/Connick* test governs actions for retaliation for an employee's speech, and because the kind of association in furtherance of litigation protected by the First Amendment is a type of expression or speech, the Seventh Circuit applies the *Pickering/Connick* requirements to claims of retaliation for involvement in a lawsuit.

The *Pickering/Connick* standard requires that the employee's speech be about a matter of public concern to be protected by the First Amendment. Likewise, before an employee can claim that the First Amendment prohibited his or her firing for associating with counsel in order to pursue a lawsuit, the employee must show that the subject of the lawsuit was a matter of public concern. *Zorzi*, 30 F.3d at 896 ("If a public employee is retaliated against for filing a lawsuit, the public employee has no First Amendment claim unless the lawsuit involves a matter of public concern.").

The allegations of Milazzo's complaint fail in this regard. She alleges that she "consulted with an attorney about her pending demotion and her available legal recourse." Compl. ¶ 21. This allegation clearly establishes that Milazzo's reason for going to the attorney was "to advance her career, not promote a cause." *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d at 419. Although Milazzo also alleges that the defendants intended to deter "other similarly situated employees from consulting with counsel" by firing her, Compl. ¶ 44, there are no allegations that would indicate that any "similarly situated employees" were in a position to sue on a matter of public concern, either. Nor does Milazzo allege that she and other employees had been associating, either with attorneys or each other, for the purpose of bringing the political sponsorship policies of Judge O'Connell to public attention.

In short, there is no basis in the complaint from which to infer that Milazzo's consultation with an attorney involved any public concerns. Accordingly, we dismiss Count III of the complaint.

*Count IV: State Law Claim for Retaliatory Discharge*

Milazzo's last claim is a state law claim for retaliatory discharge under Illinois law. A plaintiff may have a tort cause of action for retaliatory discharge under Illinois law if the employer has discharged the employee in retaliation for the employee's activities, and the discharge was "in contravention of a clearly mandated public policy." *Palmateer v. International Harvester Co.*, 85 Ill.2d

124, 134, 52 Ill.Dec. 13, 18, 421 N.E.2d 876, 881 (1981). The difficulty, of course, lies in determining whether the discharge violated a clearly mandated public policy.

Although a public policy that will support a claim for retaliatory discharge has been broadly defined as those matters that "strike at the heart of a citizen's social rights, duties, and responsibilities," *id.*, 85 Ill.2d at 130, 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–79, in practice recent Illinois cases have limited the retaliatory discharge cause of action to two situations, retaliation for filing a worker's compensation claim and retaliation for reporting illegal conduct. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978) (establishing workers' compensation exception); *Palmateer*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (establishing criminal investigation/whistle-blowing exception).[11] "When asked to further expand the scope of the tort action beyond Workers' Compensation and "whistle-blower" related discharges, however, our supreme court has drawn the line and denied plaintiffs' retaliatory discharge causes of action. Likewise, our appellate court has refused to countenance an expansion of the tort by denying claims of retaliatory discharge brought on grounds outside of those approved in *Kelsay* and *Palmateer.*" *Mitchell v. Deal*, 241 Ill.App.3d 331, 333–34, 182 Ill. Dec. 75, 76, 609 N.E.2d 378, 379 (3d Dist. 1993) (collecting cases) (citations omitted).

■ When we decide claims brought under state law pursuant to our supplemental jurisdiction, 28 U.S.C. § 1367, we apply state law to those claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, even if we agreed completely with Milazzo's argument that a public policy exception to the at-will rule should be recognized protecting employees who consult attorneys over legitimate grievances, we are bound to honor the determination of Illinois courts to limit such exceptions

to those already identified in *Kelsay* and *Palmateer.*

■ Moreover, Illinois courts have found that the right of access to the courts to pursue grievances, contained in the United States and Illinois constitutions, does not support a public policy exception protecting an employee's right to confer with a lawyer regarding private disputes with the employer. *See Paris v. Cherry Payment Sys., Inc.*, 265 Ill.App.3d 383, 385, 202 Ill.Dec. 705, 707–08, 638 N.E.2d 351, 353–54 (1st Dist.1994); *Abrams v. Echlin Corp.*, 174 Ill.App.3d 434, 440–42, 123 Ill.Dec. 884, 888–90, 528 N.E.2d 429, 433–35 (1st Dist.1988). Both of these cases cite with approval *Kavanagh v. KLM Royal Dutch Airlines*, 566 F.Supp. 242, 244 (N.D.Ill.1983), in which Judge Leighton found that a public policy exception protecting employees who consult attorneys should not be recognized, because doing so would to greatly refashion the balance of power that currently exists in Illinois' law of employment at will. Without commenting on the merit of that balance of power, we generally agree with this statement. We further find that there are no legal principles that would support the notion that a purely private employment dispute suddenly becomes a matter of "public policy" merely because the employee has retained counsel. For all of these reasons, we grant the defendants' motion to dismiss Count IV of Milazzo's complaint.

### Qualified Immunity

■ The final argument to be addressed is the defendants' contention that they are entitled to qualified immunity from suit. Government officials sued in their individual capacities are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When faced with a motion that includes arguments on both the

11. We note that *Palmateer* listed cases in which other public policy exceptions to the at-will rule had been recognized, including refusing to violate a statute, refusing to evade jury duty, and engaging in statutorily protected union activities. *Id.*, 85 Ill.2d at 130–31, 52 Ill.Dec. at 16, 421 N.E.2d at 879. Presumably, these public policy exceptions are still valid, despite the common failure of recent cases to mention them. The allegations of Milazzo's complaint do not implicate any of these situations.

substance of the plaintiff's claims and qualified immunity, a court should first address those arguments directed to substance. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (initial inquiry in qualified immunity determinations is "whether the plaintiff has asserted a violation of a constitutional right at all"). Once the court has determined that a viable constitutional claim has been made, it examines the applicability of qualified immunity on that claim. *Id.*

We have conducted this threshold inquiry, *see supra,* and have determined that only one of the four claims states a violation of a constitutional right. Milazzo's claim that she was fired because of her political affiliations in violation of her First Amendment rights (Count II) must be allowed to proceed further, as it is unclear from the allegations of the complaint whether or not she held a confidential or policy-making position. That same dearth of the facts necessary to determine the ultimate viability of Count II also precludes us from holding that the defendants have qualified immunity on this claim. At this point, we simply do not have sufficient information to conclude that any reasonable government official would have believed that Milazzo held a position for which political loyalty was required. *See Kolman v. Sheahan,* 31 F.3d 429, 434 (7th Cir.1994) ("even a qualified immunity inquiry cannot take place until the facts about [the plaintiff's position] and the plaintiff['s] roles ... are put on the table"). Accordingly, we deny the defendants' request for a finding of qualified immunity at this time.

## CONCLUSION

For the foregoing reasons, we grant the defendants' motion to dismiss as to Counts I, III and IV of the plaintiff's complaint, and deny the motion as to Count II. A status hearing in this case is set for May 10, 1996 at 9:30 a.m.